# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| THOMAS HARRIS, on behalf of G.H., ) <br> a Minor, Individually, and on Behalf of ) <br> All Others Similarly Situated, ) <br> ) <br>      Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN INCOME LIFE ) <br> INSURANCE CO., ) <br> ) <br>      Defendant. ) | Case No. 6:25-cv-00262 <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Thomas Harris, on behalf of his minor child G.H. ("Plaintiff"), through his undersigned counsel, brings this action against American Income Life Insurance Co. ("AIL" or "Defendant") pursuant to the investigation of his attorneys, personal knowledge as to himself and his own acts and otherwise upon information and belief, and alleges as follows:

## INTRODUCTION

1.     AIL is a life insurance company based in Waco, Texas which is a wholly-owned subsidiary of Globe Life, Inc. ("Globe Life.")  Globe Life advertises itself as having an "A" rating from independent insurance analyst A.M. Best Company and reportedly has more than $220 billion of coverage in force." Globe Life and its "family of companies" markets itself as providing "secure life and supplemental health insurance protection to our policyholders today and in the future" and claims "Globe Life will be there when you need us the most."[1]

---

[1] https://home.globelifeinsurance.com/about, last accessed June 24, 2025.

2.      On or about October 7, 2024, Globe Life reported to the SEC that at some point it had been the recipient of a hack and exfiltration of sensitive personal information ("SPI") involving approximately five thousand individuals who are or were its clients (the "Data Breach").[2]

3.      In February 2025, Globe Life publicly reported that, in fact, the number was closer to 850,000 individuals.[3]

4.      Globe Life reported that this SPI included, at least, names, addresses, dates of birth, Social Security numbers, email addresses, phone numbers, health information, and insurance policy information."[4]

5.      On information and belief, the Data Breach was limited to Globe Life's subsidiary AIL.

6.      Plaintiff and other members of the Class of similarly situated victims (defined further below) whose SPI was compromised by the Data Breach now face a present and imminent lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

7.      The information stolen in cyber-attacks allows the modern thief to assume victims' identities when carrying out criminal acts such as:

- Filing fraudulent tax returns;

- Using victims' credit history;

- Making financial transactions on behalf of victims, including opening credit accounts in victims' names;

---

[2] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/320335/000032033524000056/gl-20241017.htm, last accessed June 24, 2025..
[3] https://www.securityweek.com/insurance-company-globe-life-notifying-850000-people-of-data-breach/, last accessed June 24, 2025.
[4] *Id.*

- Impersonating victims via mail and/or email;

- Impersonating victims in cyber forums and social networks;

- Stealing benefits that belong to victims; and/or

- Committing illegal acts which, in turn, incriminate victims.

8.    Plaintiff's and other Class members' SPI was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the SPI of Plaintiff and Class members.

9.    As of this writing, there exist many Class members who have no idea their SPI has been compromised, and that they are at significant risk of identity theft and various other forms of personal, social, and financial harm.  The risk will remain for their respective lifetimes.

10.    Plaintiff brings this action on behalf of all persons whose SPI was compromised as a result of Defendant's failure to: (i) adequately protect consumers' SPI, (ii) adequately warn its current and former customers and potential customers of its inadequate information security practices, and (iii) effectively monitor its platforms for security vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates state statutes, as specified further below.

11.    Plaintiff and similarly situated individuals have suffered injury as a result of Defendant's conduct.  These injuries include: (i) lost or diminished inherent value of SPI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their SPI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to necessary uncompensated lost time;
and (iv) the continued and certainly an increased risk to their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under 28 U.S.C.

§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the Class is a citizen of a state different from Defendant. Defendant is a citizen of Texas.

13.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located within the Waco Division of the Western District of Texas.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from the Waco Division of the Western District of Texas.  Defendant has its principal place of business within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## PARTIES

15.     Plaintiff Thomas Harris (and his minor daughter G.H.) are citizens of Missouri, residing in the independent city of St. Louis.  On or about June 23, 2025, Plaintiff was informed via notice letter from AIL dated June 18, 2025 (the "Notice Letter") that his daughter had been a victim of the Data Breach.

16.     Defendant American Income Life Insurance Company is a for-profit corporation with its principal place of business at 1200 Wooded Acres Drive, Waco, Texas, 76710.

## FACTUAL ALLEGATIONS

17.     Defendant is a nationwide life insurance company.

18.     In the ordinary course of doing business with Defendant, customers provide Defendant with SPI such as, for example:

    a.   Name, address, phone number;

    b.   Authentication and security information such as government identification, Social Security number, and signature;

    c.   Demographic information, such as age, gender, and date of birth;

    d.   Medical information, including self-reported medical histories; and

    e.   Bank account information, such as bank account number.

19.    On or about October 7, 2024, Defendant's parent company reported to the SEC that the Data Breach had occurred, stating:

> This information includes certain personally identifiable information categories such as names, email addresses, phone numbers, postal addresses, and in some instances Social Security numbers, health-related data, and other policy information for approximately 5,000 individuals; however, the total number of potentially impacted persons or the full scope of information possessed by the threat actor has not been fully verified. This information does not appear to contain personally identifiable financial information such as credit card data or banking information. Most recently, the threat actor also shared information about a limited number of individuals to short sellers and plaintiffs' attorneys. The threat actor claims to possess additional categories of information, which claims remain under investigation and have not been verified.[5]

20.    On January 31, 2025, media outlets began reporting that the Data Breach was much larger and more impactful than previously suspected.  Outlets reported that "[t]he hackers obtained Social Security numbers, names, addresses, health-related data and more. The company said the incident did not involve ransomware and reiterated that finding in the updated filing on Thursday. The filing this week confirmed that names, email addresses, phone numbers, postal addresses,

---

[5] https://www.sec.gov/ix?doc=/Archives/edgar/data/320335/000032033524000056/gl-20241017.htm, last accessed June 24, 2025.

Social Security numbers, health data and insurance policy information were accessed by the hackers."[6]

21.    While Defendant became aware of the Data Breach no later than October 7, 2024, it took approximately eight months for Defendant to notify impacted individuals of the breach.

22.    As a result, Plaintiff's and class members' SPI was in the hands of hackers for no less than eight months, and perhaps much longer, before Defendant began notifying them of the Data Breach.

23.    As of this writing, Defendant has offered no concrete information on the steps it has taken or specific efforts made to reasonably ensure that such a breach cannot or will not occur again.

24.    Defendant is reportedly offering minimal if any additional assistance to Plaintiff and class members beyond an inadequate offer of free credit monitoring.

25.    This response is entirely inadequate to Plaintiff and other Class members who now potentially face years of heightened risk from the theft of their SPI and who may have already incurred substantial out-of-pocket costs in responding to the Data Breach.

26.    Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class members, to keep their SPI confidential and to protect it from unauthorized access and disclosure.

27.    Plaintiff and Class members provided their SPI to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

---

[6] https://therecord.media/globe-life-updated-sec-filing-hackers-extortion-data-breach. Last accessed June 24, 2025.

28.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches generally, and increases in the private sector and the insurance industry specifically preceding the date of the breach.

29.     Indeed, data breaches, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry, including Defendant.

30.     According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[7]  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[8]

31.     The SPI of Plaintiff and members of the Class was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the SPI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

32.     Defendant knew, or reasonably should have known, of the importance of safeguarding the SPI of Plaintiff and members of the Class, including Social Security numbers, dates of birth, and other sensitive information, as well as of the foreseeable consequences that

---

[7] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf, last accessed June 24, 2025.
[8] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

would occur if Defendant's data security systems were inadequate to safeguard this SPI and were breached, including, specifically, the significant costs that would be imposed on Plaintiff and other members of the Class a result of a breach.

33.    Plaintiff and members of the Class now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class has incurred, is incurring and will continue to incur such damages in addition to any fraudulent use of their SPI.

34.    The injuries to Plaintiff and members of the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the SPI of Plaintiff and other members of the Class.

35.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

36.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

37.    The FTC further recommends that companies not maintain SPI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security

measures.

38.     The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39.     Defendant failed to properly implement basic data security practices, and its failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer SPI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

40.     A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

41.     Best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

42.     Businesses that store personal information are likely to be targeted by cyber criminals. Credit card and bank account numbers are tempting targets for hackers. However, information such as dates of birth and Social Security numbers are even more attractive to hackers; they are not easily destroyed and can be easily used to perpetrate identity theft and other types of fraud.

43.     The SPI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to

$200, and bank details have a price range of $50 to $200.[9]

44.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration ("SSA") stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[10]

45.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

46.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[11]

47.     Furthermore, as the SSA warns:

---

[9]  *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs, last accessed June 24, 2025.
[10] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), https://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed June 24, 2025.
[11] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft, last accessed June 24, 2025.

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[12]

48.    Here, the unauthorized access left the cyber criminals with the tools to perform the most thorough identity theft—they have obtained all the essential SPI to mimic the identity of the user. The personal data of Plaintiff and members of the Class stolen in the Data Breach constitutes a dream for hackers and a nightmare for Plaintiff and the Class. Stolen personal data of Plaintiff and members of the Class represents essentially one-stop shopping for identity thieves.

49.    The FTC has released its updated publication on protecting SPI for businesses, which includes instructions on protecting SPI, properly disposing of SPI, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

50.    General policy reasons support such an approach. A person whose personal information has been compromised may not see any signs of identity theft for years. According to the United States Government Accountability Office ("GAO") Report to Congressional Requesters:

> [L]aw enforcement officials told us that in some cases, stolen data

---

[12] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), http://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed June 24, 2025.

> may be held for up to a year or more before being used to commit
> identity theft. Further, once stolen data have been sold or posted on
> the Web, fraudulent use of that information may continue for years.
> As a result, studies that attempt to measure the harm resulting from
> data breaches cannot necessarily rule out all future harm.[13]

51.    Companies recognize that SPI is a valuable asset. Indeed, SPI is a valuable commodity.  A "cyber black-market" exists in which criminals openly post stolen Social Security numbers and other SPI on a number of Internet websites. The stolen personal data of Plaintiff and members of the Class has a high value on both legitimate and black markets.

52.    Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment benefits. The U.S. government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

53.    As noted above, the disclosure of Social Security numbers in particular poses a significant risk. Criminals can, for example, use Social Security numbers to create false bank accounts or file fraudulent tax returns.  Defendant's former and current customers whose Social Security numbers have been compromised now face a real, present, imminent and substantial risk of identity theft and other problems associated with the disclosure of their Social Security number and will need to monitor their credit and tax filings for an indefinite duration.

54.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change — Social Security number, driver license number or government-issued identification number, name, and date of birth.

---

[13] *See* https://www.gao.gov/assets/gao-07-737.pdf (June 2007) at 29, last accessed June 24, 2025.

55.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[14]

56.     Among other forms of fraud, identity thieves may obtain driver licenses, government benefits, medical services, and housing or even give false information to police.  An individual may not know that his or her driver license was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud, or until the individual attempts to lawfully apply for unemployment and is denied benefits (due to the prior, fraudulent application and award of benefits).

57.     The SPI of children is particularly valuable for hackers as children's information is routinely viewed as more valuable than adult information because children's SPI is not routinely monitored and misused SPI can go undiscovered for years.[15]

## FACTS SPECIFIC TO PLAINTIFF

58.     G.H. is the minor child of Plaintiff Thomas Harris.

59.     G.H. is a former policyholder of Defendant, whose father took out a policy in her name.  As a result of this, G.H's SPI was stored with Defendant and on Defendant's databases and systems as a result of her dealings with Defendant.

60.     Plaintiff was required, in order to apply for and obtain insurance products from Globe Life, to provide Globe Life with G.H.'s confidential SPI, including, among other things, financial, health, social security, and other  information.  As a result, Defendant possessed, stored,

---

[14] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html, last accessed June 24, 2025.
[15]*See*  https://www.wral.com/news/education/powerschool-breach-why-children-are-vulnerable-how-to-protect-them-may-2025/, last accessed June 24, 2025.

maintained and controlled that information, and was responsible for it and for safeguarding it and keeping it secure and confidential for as long as it was stored and in its possession, custody and/or control.

61.     As a result of these circumstances, and Defendant's failure to do so and its failure to fulfill its duties and responsibilities in this respect, G.H''s SPI was among the data accessed by an unauthorized third-party in the Data Breach.  G.H. is therefore a member of the Class.

62.     Plaintiff received a Notice Letter from Defendant in approximately June 2025, stating that G.H.'s SPI, including name, date of birth, Social Security number, health-related information, and policy information, was involved in the Data Breach.

63.     Plaintiff was unaware that his daughter was a victim of the Data Breach until receiving the Notice Letter concerning the Data Breach in June 2025.

64.     As a result of the Data Breach, G.H. was and continues to be injured in multiple material respects.

65.     Plaintiff has suffered significant necessary uncompensated lost time dealing with the consequences of the Data Breach. This includes and continues to include, among other things: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring potentially applications for a credit freeze, credit monitoring options, and identity theft insurance options; time spent self-monitoring her financial accounts with heightened scrutiny; and time spent searching for and consulting with legal counsel regarding options for seeking and remedying and/or mitigating the effects of the Data Breach.  Plaintiff regularly takes reasonable steps to safeguard her own SPI in his own control.

66.     Since the time of the Data Breach, Plaintiff has spent time dealing with the fallout from the breach, and has suffered anxiety due to the public dissemination of his daughter's personal

information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her SPI for purposes of identity theft and fraud. Plaintiff is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

67.    Plaintiff also has been and continues to be injured by the serious and material risk of future harm suffer from the Data Breach; this risk is imminent and substantial because G.H.'s data has been exposed within and as a result of the Data Breach. The highly sensitive and confidential nature of the data involved presents a very high risk of identity theft or fraud, and the significant likelihood that some or all of Plaintiff's exposed information has already been misused.

68.    Plaintiff and other Class members also suffered actual injury in the form of damages to and diminution in the value of their SPI—a condition of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

69.    As mentioned above, as a result of the Data Breach, Plaintiff also has experienced increased anxiety as a result of the loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling their SPI and financial information.

70.    Plaintiff (and other Class members) have also suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their SPI and financial information being placed in the hands of unauthorized third parties/criminals.

71.    Plaintiff and other Class members have a strong continuing interest in ensuring that their SPI and financial information, which, upon information and belief, remains backed up in Defendant's possession, custody and/or control, is protected and safeguarded from future breaches on a consistent and ongoing basis.  The same is true of other Class members.

72.     Had Plaintiff (and other Class members) known that their SPI would not have been adequately secured and protected by Defendant, they would not have provided their SPI to Defendant, done business with Defendant or purchased Defendant's products or  services in such a way that required that they provide their SPI to Defendant, and/or they would have insisted that the SPI at issue not be stored, or continue to be stored, in Defendant's insecure network, databases and systems.

73.     Plaintiff (and other Class members) has suffered actual injury from having her SPI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her SPI, a form of property that Defendant obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

74.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this class action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following class:

> All natural persons residing in the United States whose SPI was compromised in the Data Breach that was announced by Defendant on or about October 7, 2024.

76.     Excluded from the Class are all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, and all judges assigned to

hear any aspect of this litigation and their immediate family members.

77.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

78.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. Defendant has, as of this writing, indicated that the total number of Class Members is approximately 850,000.  The Class is readily identifiable within Defendant's records.

79.     **Commonality**: Questions of law and fact common to the Class exist and predominate over any questions affecting only individual members of the Class. These include:

    a.  When Defendant actually learned of the Data Breach and whether its response was adequate;

    b.  Whether Defendant owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their SPI;

    c.  Whether Defendant breached that duty;

    d.  Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing the SPI of Plaintiff and members of the Class;

    e.  Whether Defendant acted negligently in connection with the monitoring and/or protection of SPI belonging to Plaintiff and members of the Class;

    f.  Whether Defendant knew or should have known that it did not employ reasonable measures to keep the SPI of Plaintiff and members of the Class secure and to prevent loss or misuse of that SPI;

    g.  Whether Defendant has adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

    h.  Whether Defendant caused Plaintiff's and members of the Class damage;

    i.  Whether Defendant violated the law by failing to promptly notify Plaintiff and

members of the Class that their SPI had been compromised; and

j.  Whether Plaintiff and the other members of the Class are entitled to credit monitoring and other monetary relief.

80.  **Typicality**: Plaintiff's claims are typical of those of the other members of the Class because all had their SPI compromised as a result of the Data Breach due to Defendant's misfeasance.

81.  **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's counsel are competent and experienced in litigating privacy-related class actions.

82.  **Superiority and Manageability**:  Under rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Individual damages for any individual member of the Class are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's misconduct would go unpunished.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

83.  Class certification is also appropriate under Rule 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

84.  Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendant owed a legal duty to Plaintiff and members of the Class to exercise due care in collecting, storing, using, and safeguarding their SPI;

b.  Whether Defendant breached a legal duty to Plaintiff and the members of the Class to exercise due care in collecting, storing, using, and safeguarding their SPI;

c.  Whether Defendant failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e.  Whether members of the Class are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Negligence**
**(By Plaintiff Individually and on Behalf of the Class)**

85.    Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 84.

86.    Defendant routinely handles SPI that is required of its customers, such as Plaintiff.

87.    By collecting and storing the SPI of its customers (and employees and prospective employees), Defendant owed a duty of care to the individuals whose SPI it collected to use reasonable means to secure and safeguard that SPI.

88.    As an insurance provider, Defendant is aware of that duty of care to the SPI of its customers.

89.    Additionally, as a covered entity, Defendant has a duty under HIPAA privacy laws to protect the confidentiality of patient healthcare information, including the kind stolen as part of

the Data Breach.

90.    Defendant has full knowledge of the sensitivity of the SPI and the types of harm that Plaintiff and Class members could and would suffer if the SPI were wrongfully disclosed.

91.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of their current, former, and prospective employees' SPI, and that of their beneficiaries and dependents, involved an unreasonable risk of harm to Plaintiff and Class members, even if the harm occurred through the criminal acts of a third party.

92.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.  This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and Class members' information in Defendant's possession was adequately secured and protected.

93.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class members' SPI.

94.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

95.    Plaintiff and the Class members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew of should have known of the inherent risks in collecting and storing the SPI of Plaintiff and the Class, the critical importance of providing adequate security of that SPI, and the necessity for encrypting SPI stored on Defendant's systems.

96.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class

members. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff's and Class members' SPI, including basic encryption techniques freely available to Defendant.

97.     Plaintiff and the Class members had no ability to protect their SPI that was in, and possibly remains in, Defendant's possession.

98.     Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

99.     Defendant had and continues to have a duty to adequately disclose that the SPI of Plaintiff and Class members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their SPI by third parties.

100.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the SPI of Plaintiff and Class members.

101.    Defendant has admitted that the SPI of Plaintiff and Class members was purposely exfiltrated and disclosed to unauthorized third persons as a result of the Data Breach.

102.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the SPI of Plaintiff and Class members during the time the SPI was within Defendant's possession or control.

103.    Defendant improperly and inadequately safeguarded the SPI of Plaintiff and Class members in deviation of standard industry rules, regulations, and practices at the time of the Data

Breach.

104.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former employees' SPI in the face of increased risk of theft.

105.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former employees' SPI.

106.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class members the existence and scope of the Data Breach.

107.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, the SPI of Plaintiff and Class members would not have been compromised.

108.    There is a close causal connection between Defendant's failure to implement security measures to protect the SPI of Plaintiff and Class members and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class.  Plaintiff's and Class members' SPI was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such SPI by adopting, implementing, and maintaining appropriate security measures.

109.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their SPI is used; (iii) the compromise, publication, and/or theft of their SPI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their SPI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts

spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their SPI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI of its employees and former employees in its possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the SPI compromised as a result of the Data Breach for the remainder of Plaintiff's and Class members' lives.

110.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI in its continued possession.

### SECOND CLAIM FOR RELIEF
**Breach of Implied Contract**
**(By Plaintiff Individually and on Behalf of the Class)**

111.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

112.    In connection with receiving services, Plaintiff and members of the Class entered into implied contracts with Defendant.

113.    Pursuant to these implied contracts, Plaintiffs and Class members paid money to Defendant and provided Defendant with their SPI. In exchange, Defendant agreed to, among other things, and Plaintiff understood that Defendant would: (1) provide services to Plaintiff and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' SPI; and (3) protect Plaintiff's and Class

members' SPI in compliance with federal and state laws and regulations and industry standards.

114.    The protection of SPI was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Defendant, on the other hand. Had Plaintiff and Class members known that Defendant would not adequately protect its clients' SPI, they would not have received financial or other services from Defendant.

115.    Plaintiff and Class members performed their obligations under the implied contract when they provided Defendant with their SPI and paid for financial or other services from Defendant.

116.    Defendant breached its obligations under its implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their SPI and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' SPI in a manner that complies with applicable laws, regulations, and industry standards.

117.    Defendant's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

118.    Plaintiff and all other Class members were damaged by Defendant's breach of implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their SPI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their SPI has been breached; (v) they were deprived of the value of their SPI, for which there is a well-established

national and international market; (vi) necessary uncompensated lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) overpayment for services that were received without adequate data security.

### THIRD CLAIM FOR RELIEF
#### Unjust Enrichment, in the Alternative
#### (By Plaintiff Individually and on Behalf of the Nationwide Class)

119.    Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 84.

120.    Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of storing their SPI with Defendant in such a way that saved expense and labor for Defendant.

121.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class members. Defendant also benefited from the receipt of Plaintiff's and Class members' SPI, as this was used by Defendant to facilitate its core functions.

122.    The benefits given by Plaintiff and Class members to Defendant were to be used by Defendant, in part, to pay for or recoup the administrative costs of reasonable data privacy and security practices and procedures.

123.    As a result of Defendant's conduct, Plaintiff and Class members suffered actual damages in an amount to be determined at trial.

124.    Under principles of equity and good conscience, Defendant should not be permitted to retain a benefit belonging to Plaintiff and Class members because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class members granted to Defendant or were otherwise mandated by federal, state, and local laws and industry standards.

125.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds or benefits it received as a result of the conduct alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all Class members, requests judgment against the Defendant and the following:

A.    For an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class members' SPI;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class members' personal identifying information;

iv.   prohibiting Defendant from maintaining Plaintiff's and Class members' personal identifying information on a cloud-based database (if, in fact, it does so);

v.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vi.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

viii.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.   requiring Defendant to conduct regular database scanning and securing checks;

x.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying

information, as well as protecting the personal identifying information of Plaintiff and Class members;

xi.  requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii.  requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.  requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.  requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xvi.  for a period of 10 years, appointing a qualified and independent third party

assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For pre- and post-judgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 24, 2025                                Respectfully Submitted,

                                                    */s/ Joe Kendall*
                                                    Joe Kendall
                                                    Texas Bar No. 11260700
                                                    **KENDALL LAW GROUP, PLLC**
                                                    3811 Turtle Creek Blvd., Suite 825
                                                    Dallas, Texas 75219
                                                    214-744-3000
                                                    214-744-3015 (Facsimile)
                                                    jkendall@kendalllawgroup.com

                                                    ***Local Counsel for Plaintiff and the Proposed Class***

                                                    Carl V. Malmstrom*
                                                    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
                                                    111 W. Jackson Blvd., Suite 1700
                                                    Chicago, Illinois  60604
                                                    Tel: (312) 984-0000
                                                    Fax:  (212) 686-0114

malmstrom@whafh.com

Kent A. Bronson*
**BRONSON LEGAL LLC**
1216 Broadway (2nd Floor)
New York, NY 10001
Tel: (609) 255-1031
Fax:
bronsonlegalny@gmail.com

*pro hac vice forthcoming*

***Attorneys for Plaintiff and the Proposed Class***