**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| THOMAS HARRIS, on behalf of G.H., a minor, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INCOME LIFE INSURANCE CO.,<br><br>Defendant. | **Case No.: 6:25-cv-00262-LS** |
| KATELYNN MCALLISTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INCOME LIFE INSURANCE CO. and GLOBE LIFE, INC.,<br><br>Defendants. | **Case No.: 6:25-cv-00294-ADA-DTG** |
| PATSY DECOW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INCOME LIFE INSURANCE CO.,<br><br>Defendant. | **Case No.: 6:25-cv-00295-ADA-DTG** |

**PLAINTIFFS' UNOPPOSED MOTION TO CONSOLIDATE ACTIONS AND APPOINT INTERIM CO-LEAD CLASS COUNSEL AND LOCAL COUNSEL**

Plaintiffs in the above-captioned actions ("Plaintiffs"), individually, and on behalf of all those similarly situated, respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions into to the first-filed *Harris* action, as well as any other future actions filed or transferred related actions ("Related Actions") against Defendants American Income Life Insurance Co. ("AIL") and Globe Life, Inc. ("Globe Life") ("Defendants") under the new case style: "*In re American Income Life Ins. Co. Data Breach Litigation*"; (2) appoint Plaintiffs' Carl V. Malmstrom of Wolf Haldenstein Adler Freeman & Herz LLC, Kent A. Bronson of Bronson Legal LLC, Jeff Ostrow of Kopelowitz Ostrow P.A., and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Interim Co-Lead Class Counsel ("Proposed Interim Class Counsel"), and Joe Kendall of Kendall Law Group, PLLC as Interim Local Counsel ("Proposed Local Counsel); (3) stay the related actions, including any of the Defendant's responsive pleading deadlines, and require the filing of a consolidated class action complaint ("Consolidated Complaint") within 45 days of entry of an order consolidating the cases and appointing leadership; and (4) set the deadline for Defendants' response/s to the Consolidated Complaint 60 days after the Consolidated Complaint is filed, set the deadline of 30 days thereafter for Plaintiffs' response/s thereto, followed by 30 days thereafter for the Defendants' reply/ies.

As set forth in the accompanying Certificate of Conference, on July 18, 2025 Plaintiffs' Counsel conferred with Matthew Brigman of King & Spalding, counsel for Defendants, and were informed that Defendants do not oppose consolidation and take no position regarding appointment of class counsel.

As discussed below, consolidation is proper because each case: (i) is brought against the same Defendants; (ii) is based on the same data incident ("Data Breach") announced by Globe

Life on or about October 7, 2024; (iii) asserts the same/overlapping allegations and claims; and (iv) seeks to represent the same/overlapping classes. Given the common facts and claims asserted in the actions, consolidation will streamline litigation and preserve judicial and party resources.

## I. INTRODUCTION

Plaintiff, Thomas Harris, on behalf of G.H., a minor, filed his Class Action Complaint on June 24, 2025, seeking to hold AIL liable for disclosure of personally identifiable information ("PII") belonging to Plaintiff and about 850,000 other individuals affected by the Data Breach. Subsequent to the filing of *Harris*, two other Related Actions were filed in this Court arising from the same Data Breach and operative facts and asserting substantially identical claims on behalf of overlapping putative classes, making consolidation into the first-filed case appropriate.

## II. COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

### A. The Data Breach

AIL is a life insurance company, and a wholly-owned subsidiary of Globe Life . *Harris* Compl., ECF No. 1, ¶ 1. Plaintiffs in this action allege Defendants collected and inadequately maintained their and the putative class members' PII, including Social Security numbers, resulting in the Data Breach. *Id.* ¶ 2. Globe Life reported that the PII included, at least names, addresses, dates of birth, Social Security numbers, email addresses, phone numbers, health information, and insurance policy information. The Related Actions seek to remedy Defendants' failures and the consequences therefrom. Plaintiffs in the above-captioned cases filed their complaints as putative class actions on behalf of themselves and all others whose PII was exposed during the Data Breach.

### B. Consolidation of the Related Actions

The Related Actions before this Court are substantially the same and consolidation is appropriate. Each lawsuit arises from the same common set of alleged operative facts: the Data

Breach. Due to each Plaintiffs' reliance on the same set of alleged operative facts, all Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding, which will preserve party and judicial resources.

## III. ARGUMENT AND AUTHORITIES

### A. Legal Standard for Consolidation

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law ***or*** fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added). "Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'" *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) (quoting Fed. R. Civ. P. 42(a)); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted). Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) ("Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay."). The following factors are pertinent to whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of

> prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc*., 3:22-CV-0410-B, 2023 WL 5925880 *2 (N.D. Tex. Sept. 12, 2023).

**B. The Related Actions Should be Consolidated with *Harris*.**

Each Related Action involves common questions of law and fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing any party. The Court should therefore consolidate all Related Actions with this first-filed case.

All Related Actions involve common factual and legal questions as they arise from the same occurrence: the Data Breach. Courts have recognized that consolidation is appropriate where multiple actions arise from the same data breach event. *See, e.g.*, *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

Because all Related Actions are filed in this District, the first factor guiding the Court's analysis weighs in favor of consolidation. *See U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) (first factor satisfied when "the cases are pending in the same court"); *Zolezzi v. Celadon Trucking Servs., Inc*., No. CIV.A.H-08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) (first factor satisfied where both actions filed in same district and division).

The second factor is likewise satisfied because all Related Actions are against Defendants and seek to certify national classes of similarly situated individuals whose PII was compromised in the Data Breach. *See Lockhart*, 2024 WL 303253, at *2 (fact that all cases filed on behalf of same class of data breach victims against same defendant supports consolidation); *Bayati*, 2023 WL 5925880, at *2 (consolidating actions filed on behalf of same proposed class against same defendant); *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) (ordering consolidation where "[b]oth cases involve essentially the same parties").

The third and fourth factors also favor consolidation. On one hand, trying the Related Actions separately would risk inconsistent findings and rulings in each case arising from the same Data Breach, brought on behalf of the same putative class of individuals affected, against the same Defendant. *See Lockhart*, 2024 WL 303253, at *2 ( "[c]onsolidation will ensure consistent rulings and promote judicial economy" where three cases asserted "causes of action based on the same data breach resulting from the same cyberattack"); *JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017) ("In light of these common questions of law and fact, the Court finds there is a risk of inconsistent adjudication if the Court were to allow these cases to be tried separately before different judges[.]"). On the other hand, "[a]ny prejudice to the parties flowing from the consolidation would be minimal in comparison to these considerations." *Id.*; *see also Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014) ("Given the substantial similarities among the facts and causes of action, the prospect of confusion incumbent on the fact finder will be nominal at best because these cases tell the same story[.]"); *Zolezzi*, 2009 WL 736057, at *2 ("[T]he risk of prejudice or confusion if the cases are consolidated is minimal. This risk is, therefore, outweighed

by the risk of inconsistent judgments should the cases be tried separately.”).

Regarding the fifth factor, consolidation will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for the three cases arising from the same Data Breach, involving the same Defendants and putative classes, and the same factual and legal issues. This factor thus weighs in favor of consolidation. *See Bayati*, 2023 WL 5925880, at *2 (where two actions “make nearly identical legal claims based on the same set of facts,” and were “filed on behalf of the same proposed class,” consolidation “would therefore promote judicial efficiency”); *Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) (ordering consolidation where “the same factual and legal issues exist in both cases and consolidating the actions would be more efficient than litigating the two cases separately”).

Finally, because all Related Actions are at the same early procedural stage—complaints are filed, but there have been no responsive pleadings and no scheduling orders entered—the sixth factor weighs in favor of consolidation. *See Doe (S.M.A.) v. Salesforce, Inc*., No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) (granting consolidation where cases at the same pre-trial stage); *Arnold & Co.*, 2013 WL 1411773, at *2 (ordering consolidation where “the cases were filed less than one month apart, no dispositive motions have been filed in either case, and very little discovery has occurred”); *Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) (ordering consolidation where “[n]either case has been set on schedule yet, so the litigation is at the same stage in both”).

Accordingly, because all factors weigh in favor of consolidation, consolidating the Related Actions “is not only appropriate, but would promote this Court's judicial efficiency and economy and would tend to avoid unnecessary costs or delay.” *Mayfield*, 2003 WL 21250935, at *2. The

Court should therefore consolidate the Related Actions into this first-filed case.

**C. Legal Standard for Appointment of Interim Class Counsel.**

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIG. ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

**i. Appointment of Interim Class Counsel is Appropriate**

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court

under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Class Counsels' work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

**a. Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.**

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things: investigating the facts surrounding the Data Breach; interviewing numerous consumers injured by the Data Breach; researching legal

claims; consulting with potential liability and damage experts; drafting initial pleadings; and organizing Plaintiffs and their counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers.

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

**b. Proposed Leadership Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.**

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). As demonstrated below, Proposed Interim Class Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

**<u>Proposed Interim Co-Lead Counsel</u>**

***Jeff Ostrow of Kopelowitz Ostrow P.A.***

Jeff Ostrow is the Managing Partner of KO and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 30 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks,

commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is counsel of record in more than 400 pending data breach cases. He is currently court-appointed Lead Counsel in MDLs and in federal and state courts across the country. He is Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people, and settled for $27 million. Additional examples of data breach cases in which he serves as Lead Counsel include: *In Re: AT&T Inc. Customer Data Sec. Breach Litig.*, 3:24-cv-00757 (N.D. Tex.), which settled for $177 million; *McNally, et al. v. Infosys McAmish Sys., LLC*, 1:24-cv-00995 (N.D. Ga.), which settled for $17.5 million; *Owens v. MGM Resorts Int'l*, 2:23-cv-01480-RFB-MDC (D. Nev.), which settled for $45 million; *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), which settled for $13.75 million; *In re Berry, Dunn, McNeil & Parker Data Sec. Incident Litig.* (D. Me.), which settled for $7.25 million; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), which settled for $8.5 million; *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting 8.9 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients; and *In re DISA Global Data Breach Litig.*, No. 4:25-cv-00821 (S.D. Tex.), affecting 3.3 million individuals. Moreover, Mr. Ostrow has court-appointed positions in MDLs including *In In re: Evolve Bank & Trust Customer Data Breach Litig.*, MDL No. 3127 (W.D. Tenn.), which settled for $17.0 million, as well as *In re: Snowflake, Inc., Data Breach Litig.*, MDL No. 3126 (D. Mont.); *In re: Consumer Vehicle Driving Data Tracking Collection*, MDL No. 3115 (N.D. Ga.); *In re*

*Change Healthcare, Inc. Data Breach Litig.,* MDL No. 3108 (D. Minn.); and *In re: PowerSchool Holdings, Inc. Customer Data Sec. Breach Litig.*, MDL No. 3149 (S.D. Cal.).

For about 13 years, KO has served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL resulting in recovery of $1.2 billion from the nation's largest banks, and Liaison Counsel in *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. KO is also co-counsel for Broward County and the City of Fort Lauderdale in *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), recovering $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, U.S. District Judge James Lorenz made the following observation in granting final approval of a settlement includin a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to end an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was a lead counsel, U. S. District Judge James Lawrence King commented: "Class Counsel's efforts in pursuing and settling these consumer claims were, quite simply, outstanding." *In re Checking Acct. Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, U. S. District Judge Jose Martinez

noted "Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims ... The case involved difficult factual and legal issues from a global pandemic. ... Despite the strong defenses presented by [Defendant], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14. Mr. Ostrow has worked productively with Proposed Interim Class Counsel in other cases. A copy of Mr. Ostrow's resume, which includes additional information about Mr. Ostrow and his firm is attached as ***Exhibit A***.

***Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC***

Mr. Klinger is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Located in Chiago, Illinois, Mr. Klinger is recognized as one of the most respected data privacy attorneys in the U. S., having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024) and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024). Law360 recently highlighted Mr. Klinger's work in the privacy space.[1]

Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litig.*, 1:23-md-03083 (D. Mass.) (Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach impacting over 95 million consumers); *Isaiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JCE (C.D. Cal) (Mr. Klinger was appointed co-lead counsel in a data breach impacting 17 million consumers); *Owens v. MGM Resorts Int'l*, No. 23-cv-01480 (D. Nev.) (Mr. Klinger serves as class counsel and obtained a settlement of $45 million in a data breach class action). Mr. Klinger and Milberg have played an

---

[1] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

important role in developing the favorable case law many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a First Circuit decision finding Article III standing and reversing dismissal with prejudice of a data breach case); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss a data breach case involving 3 million persons); *Flores v. Aon Corp.*, 2023 IL App. (1st) (230140) (Mr. Klinger obtained reversal of a dismissal with prejudice in a data breach class action); *In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

Over the past 3 years, Mr. Klinger has settled on a classwide basis more than 100 class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Representative cases include: *Parris, et al., v. Meta Platforms, Inc.*, No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action); *Boone v. Snap, Inc.*, No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action); *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action).[2]

---

[2] Mr. Klinger has also successfully litigated privacy class actions through class certification. *See, e.g.*, *Sewall v. Home Partners Holdings LLC*, No. A23-1662, 2024 WL 64318, at *1 (Minn. Ct. App. Jan. 2, 2024) (denying interlocutory review of certification of a class of lessees in a landlord-tenant dispute); *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (Mr. Klinger certified, over objection, a nationwide privacy class action of more than one million class members; the case later settled for $6.5 million).

Mr. Klinger also has the full weight of his law firm behind him. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements. Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the U. S. Supreme Court. The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."

Milberg is one of the largest plaintiffs' class action firms in the U. S. (and abroad). The firm currently is involved in some of the largest and well-known class action cases in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than 120 attorneys who work from offices across the U. S. and in Portugal, the United Kingdom, the Netherlands, and Germany. Mr. Klinger's resume is attached as ***Exhibit B***.

***Carl V. Malmstrom of Wolf Haldenstein Adler Freeman & Herz LLP***

Carl V. Malmstrom, Of Counsel and the head Wolf Haldenstein's Chicago office, has litigated class actions for more than 16 years. He is admitted in Illinois, Minnesota, the U. S. Court of Appeals for the Seventh Circuit, and the following U. S. District Courts: Northern, Central, and Southern Districts of Illinois; District of Colorado; Northern and Southern Districts of Indiana; District of Minnesota; Western District of Michigan; Eastern District of Missouri; District of Nebraska; District of New Mexico; Western District of New York; and District of North Dakota.

Mr. Malmstrom serves as court-appointed Interim Liaison Counsel in *In re Seresto Flea & Tick Collar Mktg., Sales Practices, & Prods. Liab. Litig.,* No. 1:21-cv-4447, MDL No. 3009 (N.D. Ill.). He recently served as Co-Lead Class Counsel in *In re Herff Jones Data Breach Litig.*, No.

1:21-cv-1329 (S.D. Ind.), settled for $4.35 million with no objectors. He is on the Plaintiffs' Interim Executive Committee in *In re Shields Health Care Grp., Inc. Data Breach Litig.*, No. 1:22-cv-10901, D. Mass. and was on the Executive Leadership Committee in *In re Lincare Holdings, Inc. Data Breach Litig.*, No. 8:22-cv-1472 (M.D. Fla.) He has represented plaintiffs in numerous other data privacy class actions, including: *In re Experian Data Breach Litig.,* No. 8:15-cv-1592 (C.D. Cal.) (settled); *Mizrahi v. Nat'l Bd. of Exam'rs in Optometry, Inc.,* No. 1:16-cv-3146 (D. Md.) (settled); *Bokelman v. FCH Enters.*, No. 1:18-cv-209 RJB-RLP (D. Haw.) (settled; Judge Bryan noted, "I've been impressed by the quality of the work you've done throughout here, and that is reflected, I think, in the fact that no one has objected to the settlement."); *Hymes v. Earl Enters. Holdings, Inc.*, 2021-CA-007617-O (9th Jud. Ct. Fla.) (settled)*; Christofferson v. Creation Entm't, Inc.,* L.A. Super. Ct., 19STCV11000 (settled)*, In re Hanna Andersson & Salesforce.com Data Breach Litig.,* 3:20-cv-00812-EMC (N.D. Cal.) (settled)*, Rossi v. Claire's Stores, Inc.,* 1:20-cv-5090 (N.D. Ill.) (settled)*; Riggs v. Kroto, Inc.,* No. 1:20-cv-5822 (N.D. Ill.) (settled)*; Mahida v. Illinois Gastroenterology Grp., PLLC,* 1:22-cv-02273 (N.D. Ill.) (settled); *Henke et al. v. Medscan Lab., Inc.,*1:22-cv-69 (D.N.D.) (settled); *Chen et al. v. Michigan Ave. Immediate Care, S.C.,* 2022-CH-07101 (Cir. Ct. Cook Cty.) (settled); *Doe et al. v. Knox Coll.*, 2023-LA-9 (Cir. Ct. Knox Cty.) (settled); *Aniol et al. v. Roosevelt Univ.*, 2024-LA-283 (Cir. Ct. Will Cty.) (settled); *Roper et al. v. Rise Interactive Media & Analytics, LLC*, No. 1:23-cv-1836 (N.D. Ill.) (settled); *Sheffler v. Activate Healthcare LLC et al.*, 1:23-cv-1206, S.D. Ind. (settled); *In re Saint Xavier Univ. Data Breach Litig.*, No. 2024CH09951, Cir. Ct. Cook Cty. (settlement pending).

Mr. Malmstrom has also represented plaintiffs in numerous antitrust and consumer protection cases throughout the U. S., most notably on the leadership team for the End Payor Plaintiffs in *In re Packaged Seafood Prods.*, No. 3:15-md-2670, MDL No. 2670 (S.D. Cal.)

(settled). He also represented plaintiffs in *In re Evenflo Co., Inc. Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2938, No. 1:20-md-2938 (D. Mass.) (settlement pending); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 1:14-md-2542 (S.D.N.Y.) (settled; antitrust class action with monopoly claims involving Keurig brewers and cups); *Kjessler v. Zaappaaz, Inc.*, No. 4:18-cv-430 (S.D. Tex.) (settled; consumer antitrust class action alleging price-fixing in custom wristbands, lanyards and buttons market); *In re Fisher-Price Rock 'n Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 1:19-md-2903 (W.D.N.Y) (settlement pending; consumer products class action alleging Fisher-Price baby sleepers are unsuitable for overnight or prolonged sleep); *In re: Broiler Chicken Antitrust Litig.,* No. 1:16-cv-8637 (N.D. Ill.) (ongoing)(consumer antitrust class action alleging price-fixing in the chicken industry); *In re Pork Antitrust Litig.,* No. 0:18-cv-1776 (D. Minn.) (ongoing; antitrust class action alleging price-fixing in the pork industry); *Briggs v. Strategic Fin. Sols., LLC,* No. 1:22-cv-3705 (N.D. Ill.) (ongoing; class action alleging fraud in prominent debt relief services company and law firms); and *In re Fairlife Milk Prods. Mktg. & Sales Practices Litig.*, No. 1:19-cv-3924 (N.D. Ill.) (settled) (representing Fair Oaks Farms Food subclass; consumer products action alleging Fairlife and Fair Oaks Farms Food misrepresented ethical treatment of animals). He has also served as local counsel in nearly 200 class actions in Illinois alleging violations of the Illinois Biometric Information Privacy Act, and other securities, derivative, and consumer protection cases. His experience and knowledge are further demonstrated Wolf Haldenstein's firm resume attached as ***Exhibit C***.

***Kent A. Bronson of Bronson Legal, LLC***

Kent A. Bronson, based in New York City, has been practicing class action and complex commercial litigation for over twenty-five years, and is formerly a partner at the Milberg firm. He has been involved as lead/co-lead counsel in cases resulting in the recovery of hundreds of

millions of dollars, significant corporate governance reforms, and other important benefits for injured plaintiffs. He previously headed Milberg's Merger & Acquisition/Stockholder Derivative Practice, and lead/co-lead counsel in scores of transactional class and derivative suits recovering millions of dollars and other relief, including, among others: *N. J. Carpenters Pens. Fund v. infoGROUP, Inc.*, (14-5334-VCN, Del. Chancery Ct.) (class action against board and controlling stockholder for fiduciary breaches in corporate takeover; $13 million settlement for stockholders); *In re: PLX Tech. S'holders Litig.* (9880-VCL, Delaware Chancery Ct.) (class action for unfair company sale alleging breach of fiduciary duties, aiding and abetting claims; $14 million partial settlement); *In re: Hansen Med., Inc. S'holder Litig.* (16-CV-294288, Calif. Sup. Ct., Santa Clara Cty.) (fiduciary breach class action for unfair corporate sale; $7.5 million settlement).

Mr. Bronson was also part of the team of lead attorneys in *Comin v. International Business Machines (IBM)* 19-cv-07261-JD (N.D. Calif.), settled in 2023 for $4.75 million, an employment class action behalf of IBM sales representatives allegedly not provided with written commissions contracts and falsely told that sales commissions were "uncapped." He was also co-lead counsel in the following actions responsible for recovering hundreds of millions of dollars for aggrieved stockholders and consumers: *In re Biovail Corp. Sec. Litig.* (03-8917, S.D.N.Y.) (securities class action alleging firm made false and misleading statements relating to drug launch, inflating stock price; $138 million settlement and internal corporate governance changes); *In re Providian Fin. Sec. Litig*.(MDL 1301, E.D. Pa.) (securities fraud class action alleging credit card company inflated profits with illegal consumer charges; $38 million common fund class settlement); and *In re Coordinated Title Ins. Litig.* (009600/2003) N. Y. Sup. Ct., Comm. Div., Nassau Cty.) (consumer class action against title insurers for overbilling homeowners in refi transactions; $31.5 million settlement and 100% recovery to homeowners with valid claims). He was part of the team of lead

counsel in *Common Law Settlement Csl. v. Travelers (In re Johns-Manville)* (82 B 11656, et al (BRL)), S.D.N.Y. Bankr. Court), seeking enforcement of settlement agreements requiring Travelers to pay over $500 million to asbestos plaintiffs nationwide. The Bankruptcy Court enforced the agreements,[3] later affirmed by the Second Circuit.[4] He was co-lead counsel in *Rupnow, et al. v. E*TRADE Sec., LLC* (1:19-cv-10942-DLC, S.D.N.Y.), a breach of contract case for stock traders improperly charged "hard-to-borrow" trading fees, resulting in a 2024 settlement of $1.4 million and 100% recovery for those with valid proofs of claim. He is counsel of record in pending data breach class actions in multiple state and federal courts across the country.

Mr. Bronson's practice also includes numerous successful results for individual plaintiffs in complex commercial cases, earning high praise from clients. In *Callsome Sols. Inc. v. Google LLC* (N. Y. Sup. Ct. (Comm. Div.), N. Y. Cty.), he represented an app developer against Google for unfairly banning its product from the Play Store, and achieved a lucrative confidential settlement after exposing Google's discovery abuse to obtain almost $200,000 in sanctions and judicial criticism of Google's bad faith and "chutzbah" of its arguments against discovery sanctions. More information on these and other cases are included in the firm resume attached as ***Exhibit D***.

**<u>Proposed Liaison Counsel</u>**

***Joe Kendall of Kendall Law Group, PLLC***

Joe Kendall is a former United States District Judge in the Northern District of Texas, appointed to the bench by President George H.W. Bush in 1992, and served as a Commissioner on the U. S. Sentencing Commission, having been appointed by President Bill Clinton. Before his federal judicial service, Mr. Kendall spent 5 ½ years as a Texas State District Court Judge.

---

[3] 440 B.R. 604 (Bankr. S.D.N.Y. 2010).

[4] *Common Law Settlement Csl v. Travelers Indem. Co. (In re Johns-Manville),* 759 F.3d 206 (2d Cir. 2014).

Before ascending to the bench, he practiced as a trial lawyer representing individuals and corporations in complex cases, in both Texas state and federal courts. Since leaving the bench, he now represents alone, as co-counsel or as local counsel, individuals, pension funds, corporations, and other entities in class action litigation in both state and federal courts. As a practicing lawyer, he has personally tried over 100 jury trials to verdict, appeared before the 5th Circuit and before the U.S. Supreme Court. He has participated in many significant cases resulting in the recovery of well in excess of 1 billion dollars. He has served as lead and co-lead counsel in class actions and frequently serves as local counsel for out of state lawyers, througout Texas. He is admitted to all four U.S. District Courts in Texas. Additional information regarding Joe Kendall and his firm is set forth in the firm resume attached hereto as ***Exhibit E***.

**c. Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to this Case.**

The resources that Proposed Interim Class Counsel have already committed and will continue to commit to the case also strongly supports their appointment. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

**d. Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel.**

Plaintiffs' support for the proposed leadership structure favors of appointing Proposed Interim Class Counsel, as does the support of all parties and counsel here. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) (In designating lead counsel, courts "also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*,

No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an essential attribute for lead counsel.") (internal quotations omitted); MCL §§ 10.22 (noting desirability of "attorneys coordinat[ing] their activities without the court's assistance"), and 10.272. Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the leadership structure to avoid delay attendant with potential multi-district litigation proceedings due to the egregious nature of Defendants' unlawful conduct. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the class, and intend to litigate the case zealously while fully aware of the Court's expectation that they prosecute the case efficiently and with no duplication. Thus, they have already discussed how best to organize to effectively use their diverse skills and unique experiences to efficiently prosecute and manage the case while avoiding unnecessary and duplicative billing.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court: (1) consolidate the Related Actions and future actions into the first-filed action, under the caption: "*In re American Income Life Ins. Co. Data Breach Litig.*;" (2) appoint Carl V. Malmstrom, Kent A. Bronson, Jeff Ostrow, and Gary M. Klinger as Interim Co-Lead Class Counsel, and Joe Kendall as Interim Local Counsel; (3) stay the Related Actions, including Defendant's responsive pleading deadlines, and (4) set deadlines for filing a Consolidated Complaint 45 days after consolidation and appointment of leadership; 60 days thereafter for Defendants' response/s to the Consolidated Complaint; 30 days thereafter for Plaintiffs' response/s thereto; and 30 days thereafter for Defendants' reply/ies.

Dated: July 18, 2025

Respectfully submitted,

/s/ Joe Kendall
Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
214-744-3000
214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

***Local Counsel for Plaintiffs and the Proposed Class***

Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Kent A. Bronson*
**BRONSON LEGAL LLC**
1216 Broadway (2nd Floor)
New York, NY 10001
Tel: (609) 255-1031
bronsonlegalny@gmail.com

***Counsel for Plaintiffs Thomas Harris on behalf of G.H., a Minor, Katelynn McAllister, and the Proposed Class***

Jeff Ostrow*
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

***Counsel for Plaintiff Patsey Decow and the Proposed Class***

**pro hac vice forthcoming*

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 18, 2025 Plaintiffs' Counsel conferred with Matthew Brigman, counsel for Defendants, and were informed that Defendants do not oppose consolidation and take no position regarding appointment of class counsel.

*/s/ Gary M. Klinger*
Gary M. Klinger

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated via electronic mail on this 18th day of July, 2025.

*/s/ Joe Kendall*
Joe Kendall